IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,          Case No. 3:04 CV 7559

-vs-

                                         O R D E R

DAVID SHORT,

                Defendant.

KATZ, J.

In 2004, plaintiff the United States of America filed this action against defendants David Short and Deborah Short to collect assessed but unpaid taxes. Even though the Shorts owned real estate and even though the government had placed liens on that property prior to 2004, the government's complaint in this case included only a claim for a personal judgment against the Shorts. In 2005, after receiving notice of the Shorts' bankruptcy filing, the Court stayed this case and closed it subject to reopening on certain conditions. (Doc. 18 ("2005 Order").) The Shorts' bankruptcy concluded in discharge a few months later and extinguished all that was included in this case's complaint (the Shorts' *in personam* liability). This matter lay dormant until 2012, when the government moved to reopen the case and amend the complaint, seeking to dismiss what it cannot pursue (its original claim), add what the bankruptcy does not prohibit (lien enforcement), and add parties in interest so that it may foreclose. Alternatively, the government would like the Court to adjudge the Shorts personally liable for the assessed taxes – even though they are uncollectible as personal debts due to the bankruptcy discharge – so that it may pursue the lien enforcement separately.

On November 19, 2012, the Court issued an order in this matter denying the government's motion to reopen the case and amend its complaint. (Doc. 25 ("2012 Order").) The government's

motion for reconsideration of that under Federal Rule of Civil Procedure 59(e) is now before the Court. (Doc. 26.)

"[A] district court may alter a judgment under Rule 59 based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 551-52 (6th Cir. 2012) (citation omitted). The government contends that the Court's 2012 Order was a clear error of law. The government also asserts that it chose Rule 59(e) because, it says, the November 2012 Order is a final, appealable order. (Doc. 26-1 at 8 n.5.) The Court need not opine on whether that decision is a final, appealable order because it has the power to reconsider its recent orders either way. *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) ("The inherent power to vacate orders prior to entry of final judgment is implicitly recognized in Rule 59 of the Federal Rules of Civil Procedure . . ."). Whether the prior order is final judgment or interlocutory does not change the Court's analysis in this case.

As an initial matter, the tact taken in the government's most recent motion indicates some distance between the Court's understanding of the order and the government's reading of it regarding the Court's power to grant the government's request. The Court has three potential sources of authority to grant the government's request to reopen the case. First, if the 2005 case-closing order was a final order, then the Court may review that under Rule 60(b). Second, if the 2005 Order was interlocutory, the Court may alter it under its inherent power to do so. *Louisville/Jefferson County Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) ("[C]ourts will find justification for reconsidering interlocutory orders where there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear

2

error or prevent manifest injustice." (quotation omitted)). Third, the 2005 Order itself provided for reopening the case on the occurrence of any of three events and a Court always has the power to do so before final judgment. *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991).

As to the first source of authority, the government takes issue with the Court's Rule 60(b) analysis. The Court undertook this analysis not because it determined that the 2005 Order was the final judgment, but to explore a parallel analysis to assure itself that it had considered every logical option before denying the government's motion to reopen. (Doc. 25 at 3.) As the Order reflects, the Court agrees with the government that Rule 60(b) provides no remedy in this case.

Regarding the second potential source of authority (the Court's inherent power to reconsider its earlier orders), the government now contends the Court should use this power to modify the 2005 Order because, as it reads the 2012 Order, the 2005 Order was clear error. *Louisville/Jefferson*, 590 F.3d at 389. It explains that it reads the Court's 2012 Order as requiring the government to have moved for relief from the automatic stay in the bankruptcy court if it wanted to reopen the case in this Court. (Doc. 26-1 at 8-9; *see also id.* at 8 n.4.) This, however, is an improper reading of the 2012 Order; that order neither explicitly nor implicitly makes such a demand on the government. The Court merely observed that, "there is no indication that the government sought or obtained relief from the automatic stay (11 U.S.C. § 362)." (Doc. 25 at 2.)

If the government had moved for and received relief from the automatic stay, it could have moved to reopen the case in this Court. The government aptly points out that this is an uncommon scenario; it only seeks such relief in emergency situations. (Doc. 26-1 at 8 n.4.) Much more common is that relief from the stay occurs at the point of discharge (or the closing of the case) when the permanent injunction replaces the automatic stay. *E.g.*, *In re Ulrich*, 456 B.R. 345, 347

(Bankr. N.D. Ohio 2011) ("Once a debtor's discharge has entered, the stay is no longer in effect. If the debtor is granted a discharge, the permanent injunction of § 524 replaces the automatic stay of § 362 and prevents creditors from ever collecting a discharged debt." (quotation omitted)). The stay stops all collection activity; the injunction stops only attempts to collect discharged debt. Where, as is often the case, the stay is more restrictive than the injunction, the entry of the injunction is relief from the stay. Logically, where a plaintiff has a claim that was stayed but not enjoined, he has obtained relief from the stay (and requires no relief from the injunction), so he moves to reopen the case.

The 2005 closing order is not clear error because it provided for reopening on relief from the stay, which could come either by order of the bankruptcy court (in response to a motion) or by the issuance of the injunction if the injunction was more permissive than the stay. Neither the 2005 closing order nor the 2012 Order denying the reopening require that the government move to obtain relief from the stay or the injunction. Therefore, the government's argument that the 2005 Order is clear error lacks merit.

The third potential source of authority is the text of the 2005 closing order and the avenue it created to reopen the case:

> IT IS ORDERED that further proceedings in the within cause are hereby stayed, and the within case is hereby considered CLOSED, subject to reopening upon written motion of the plaintiff, or any other proper party in interest, after either a dismissal of the bankruptcy case, or the granting of relief from the stay imposed by Section 362 of the Bankruptcy Code, or any injunction imposed by virtue of Section 524 of the Bankruptcy Code.

(Doc. 18.) The government says that the entry of the injunction was a grant of relief from the stay and that the discharge is akin to a dismissal.

4

As discussed *supra*, the Court concurs that the entry of the injunction often works as a grant of relief from the automatic stay when it replaces the stay. Often, that is, but not always. This distinction follows logic: if the stay was more restrictive than the injunction, then when the injunction replaced the stay, it became a grant of relief from the stay. If the stay and the injunction prevented the same activity, the injunction could not have been a grant of relief from the stay. Thus, when the injunction restricts less than the stay, as the stay is lifted and the injunction granted, the injunction could be said to grant relief just to those claims stayed but not enjoined.

The government reads the stay/injunction relationship well beyond the bounds of logic or the Court's intent in issuing its 2005 Order. In the government's view, the termination of the stay is relief from the stay even if the injunction prevents the same activity. Were this true, this would make the 2005 Order's third scenario (moving to reopen on a grant of relief from the permanent injunction) superfluous because all plaintiffs would be able to reopen cases as soon as the stay was lifted, regardless of whether an injunction was entered or that injunction

On the contrary, relief from the stay happens when a party seeks that relief or when the injunction is less restrictive than the stay and allows the plaintiff to proceed on activity the stay prevented. Even though the Court agrees the injunction can be a grant of relief of the stay, the government has not – in its motion to reopen, in its reply to that motion, in its motion to reconsider, or in its reply to that motion – demonstrated that this case contained a claim that was stayed but not enjoined. Instead, the government contends that the injunction is a grant of relief from the stay because the stay barred a claim that it did not bring (lien enforcement) but the injunction did not bar that. This argument is unavailing because it is based entirely on the injunction allowing theoretical, but not actual, claims that the stay would have barred. The

5

government brought a claim for unpaid taxes against the Shorts personally, requesting, "[t]hat this Court enter judgment in its favor against defendants David and Deborah Short . . ." (Complaint, Doc. 1 at 3.) It appears that had it brought a claim for lien enforcement also, that claim would be an example of something barred by the stay but allowed by the injunction. Thus, the Court very likely would have said that the entry of the injunction and termination of the stay amounted to relief from the stay. No such thing happened here; the government's only claim was barred by the stay and continues to be barred by the injunction and the government must rely on a theoretical, un-brought claim to assert that the injunction granted it relief from the stay. Thus, the government has not sought nor obtained a grant of relief from the automatic stay or the permanent injunction and is not entitled to reopen the matter on that theory.

The Court also disagrees with the government's unsupported proposition that a discharge is akin to a dismissal. (Doc. 26-1 at 8.) *Compare* Black's Law Dictionary (9th ed. 2009), (definition of "discharge in bankruptcy") *with id.* (definition of "dismissal").

Next, the government makes a novel argument that the statute of limitations on its lien enforcement action had not run, so the Court should not have applied the relation-back doctrine to determine whether it could add parties to enforce those claims. The Court's refusal, *supra*, to alter its decision on reopening the matter obviates the need to analyze whether the government could amend its complaint to add parties using something other than the scheduling order's time to amend (*see* Doc. 10 at 2 ("Deadline for amending pleadings and adding parties: JULY 25, 2005.")) or the relation back doctrine. For the same reason, the Court cannot reconsider the government's request that the Court allow it to prosecute its original claim in order to establish the

6

unpaid tax bill against the Shorts personally (even though collecting personally is disallowed by the injunction) as a basis for the lien enforcement claim, which it would bring in another suit.

Finally, the government suggests that by refusing to reopen the case, the Court is improperly cutting short the statute of limitations on the tax liens. It also claims that the bankruptcy court must have expected the liens to be enforced because if it thought the tax liens were invalid, it would not have abandoned the real estate to the debtors because without the tax liens, the real estate would have had substantial value and the bankruptcy court would have administered the asset. The Court has no opinion on these questions regarding the validity of the liens; the Court is tasked with deciding only whether the government can reopen this case and amend its complaint.

For these reasons, the government's motion for reconsideration is denied. (Doc. 26.)

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE